Filed 5/3/13  P. v. Kim CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B236596 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA374577) |
| v. | |
| DANIEL KIM et al., | |
| Defendants and Appellants. | |

APPEAL from judgments of the Superior Court of Los Angeles County, Daviann L. Mitchell, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant Daniel Kim.

Deirdre L. O'Connor for Defendant and Appellant Tae Jeong.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Vitoria B. Wilson and Seth P. McCutcheon, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Daniel Kim was convicted of robbery and assault likely to cause great bodily injury. Defendant Tae Jeong was convicted of assault likely to cause great bodily injury. On appeal, they raise numerous challenges to their convictions, but fail to demonstrate any prejudicial error. We affirm.

## FACTS AND PROCEDURE

### 1. Facts Underlying the Convictions

At approximately 12:45 a.m. on July 30, 2010, Alejandro Alvarez and Jairo Mendoza were riding their bikes near the Walk of Fame in Hollywood. Four Asian males in a black Honda stopped alongside them. Both Alvarez and Mendoza saw one person was carrying a firearm. Mendoza was able to get away and watched the events unfold from across the street. Alvarez fell off of his bike and the four males beat him, took his hat, and stole $5 from his pocket. Collectively, the four males hit and kicked Alvarez eight times, with one kick landing on his head. Alvarez was not injured.

### 2. Officers Interview Alvarez and Mendoza

Immediately after it occurred, Alvarez reported the incident, and officers subsequently arrived at the scene. Alvarez spoke to three or four police officers shortly after the incident. Alvarez described the suspects to Officer Lenn Ghaffarian, a rookie primarily responsible for the case and Officer Keith Pak, who heard a broadcast about the incident and stopped briefly at the scene. Alvarez testified that he described the suspects' hair as really short, but not shaved. Alvarez said he told officers one person was wearing a Dodger shirt. Alvarez said he did not tell officers one person was wearing a beanie, but he described the beanie at trial. According to Alvarez, the one wearing the beanie had longer hair. Alvarez also testified that he reported seeing a gun. Alvarez testified that the car transporting the suspects was either a black Honda or a black Nissan, and the wheels had black rims. Jeong contends Alvarez lied about his description of the suspects.

Officer Pak testified Alvarez had described one suspect was wearing a Dodger shirt and that all had short hair. He said Alvarez did not report the suspects as bald. Pak also said Alvarez reported one of the suspects was wearing a black beanie. Pak testified

2

Alvarez did not tell him he saw a gun. Jeong claims Pak was not at the scene on July 30, and Pak fabricated the description of the suspects.

Officer Pak's partner, Officer Seth Goldstein, testified he and Pak were at the scene of the July 30 incident. Jeong contends Goldstein lied about Pak being at the scene.

As noted, Officer Ghaffarian was the primary officer who responded to the scene and was responsible for writing a report. Ghaffarian testified Alvarez told him the suspects were bald. Ghaffarian's police report described the suspects as bald. Ghaffarian's report does not indicate any suspect was wearing a Dodger shirt. Ghaffarian testified Officer Pak was present at the scene shortly after Ghaffarian responded to the July 30 incident. Jeong contends Ghaffarian lied about Pak's presence at the scene. Jeong suggests Ghaffarian's report must be credited, and further implies that the report shows Jeong did not commit the crime because Jeong was not bald at the time of the offense.[1]

### 3. Arrest and Information

Kim and Jeong were arrested on August 7, 2010. Officers Pak and Goldstein found them in a parking lot. Kim was wearing a Dodger shirt. One of the two cars at the scene on August 7 was similar to the car Alvarez described in the July 30 incident. The only difference was the description of the car's rims.

Suspecting the persons in the parking lot on August 7 may have committed the July 30 assault and robbery, Officers Pak and Goldstein conducted a field showup.

---

[1] Throughout his brief, Jeong relies on Officer Ghaffarian's description of the suspects, not Officer Pak's or Alvarez's descriptions. On our record, there is no support for Jeong's claim that Officers Pak, Goldstein and Ghaffarian lied about Pak's presence at the scene of the incident on July 30. Other statements by Jeong's counsel such as her belief "Pak and Goldstein have an established pattern of illegally detaining young Korean males without reasonable suspicion, conducting illegal searches and trying to pressure detainees to provide information on gang activity in the area," are similarly unsupported by evidence in the record.

Alvarez and Mendoza separately identified Kim, Jeong, and Yoseph Chang.[2] Alvarez and Mendoza each rejected the two remaining persons in the field showup. Kim and Jeong were arrested, and Kim's Dodger shirt was booked into evidence. Approximately two hours elapsed between Pak's and Goldstein's initial contact with defendants and the field showup. Goldstein explained the delay was caused by a shooting elsewhere, which diverted the officers who had been scheduled to transport Alvarez and Mendoza.

Kim was charged with robbery, assault likely to cause great bodily injury, and possession of marijuana. The latter charge was dismissed. Jeong was charged with robbery and assault likely to cause great bodily injury.

### 4. Pretrial Suppression Hearing

In the trial court, Jeong's counsel moved to suppress evidence collected on August 7, 2010, and thereafter. The motion was based on the claim the "evidence was seized without . . . a search warrant and, . . . appears to have been based on an illegally prolonged detention, arrest, search, and or seizure." All counsel participated in a lengthy hearing on the motion.

The court concluded the detention was unreasonably long and therefore illegal. As a result, the court suppressed Kim's Dodger shirt and marijuana found on Kim on August 7. The court did not suppress Alvarez's or Mendoza's in-court identifications.

### 5. Trial

The only issue at trial was the identity of the persons who hit and kicked Alvarez and took his hat and money. Alvarez identified both Kim and Jeong in court. Mendoza identified both Kim and Jeong in court.[3] The only defense witness to testify was an expert on eyewitness identifications. The court allowed the prosecutor to admit Kim's

---

[2] Chang was tried with Kim and Jeong, but Chang is not a party to the current appeal.

[3] Mendoza was not able to identify Kim in the courtroom, but identified a picture of Kim.

4

Dodger shirt in evidence after Kim's defense counsel asked Officer Pak several questions suggesting Kim had not been wearing it on the night of the arrest.

During closing arguments, defense counsel argued Officer Pak was not credible, and the prosecution was simply ignoring the initial police report describing the suspects as bald because it did not conform to the prosecutor's theory of the case. Kim's counsel argued it was "offensive" to insinuate Officer Ghaffarian wrote "bald" as a description when Alvarez provided a different description. The prosecutor argued among other things, "Ghaffarian just didn't write a good report."

Jurors found Kim guilty of robbery and assault likely to cause great bodily injury. Kim was sentenced to three years in prison for the robbery and a concurrent three-year term for the assault.

Jeong was convicted of assault likely to cause great bodily injury. He was sentenced to five years probation and 365 days in the county jail.

This appeal followed.

## DISCUSSION

Jeong argues the in-court identifications should have been suppressed and the prosecutor failed to provide him with material exculpatory documents. Kim argues (1) the Dodger shirt should have been excluded, (2) the trial court should have instructed the jury on lesser included offenses of aggravated assault, and (3) his conduct credits should be recalculated. Kim joins Jeong's argument that the in-court identifications should have been suppressed and Jeong joins Kim's argument on instructional error.

### 1. *Defendants Fail to Show In-court Identifications Should Have Been Suppressed*

In the trial court, Jeong moved to suppress statements made and evidence collected on August 7, 2010, arguing it was based on an illegally prolonged detention. After concluding Kim and Jeong had been detained too long, the trial court suppressed Alvarez's and Mendoza's field identifications of Jeong and Kim.

On appeal, Jeong argues the Fourth Amendment and due process required the suppression of Alvarez's and Mendoza's in-court identifications. Assuming the

arguments are preserved, defendants demonstrate no error in the introduction of Alvarez's and Mendoza's in-court identifications.

## A. Fourth Amendment

Initially, relying on *United States v. Crews* (1980) 445 U.S. 463, 472 (*Crews*), defendants argue the in-court identifications should have been suppressed in order to avoid a Fourth Amendment violation. We disagree.

In *Crews*, the United States Supreme Court held that an independent in-court identification was admissible notwithstanding an illegal arrest. (*Crews*, *supra*, 445 U.S. at pp. 471-472.) The court identified three elements of an in-court identification: "A victim's in-court identification of the accused has three distinct elements. First, the victim is present at trial to testify as to what transpired between her and the offender, and to identify the defendant as the culprit. Second, the victim possesses knowledge of and the ability to reconstruct the prior criminal occurrence and to identify the defendant from her observations of him at the time of the crime. And third, the defendant is also physically present in the courtroom, so that the victim can observe him and compare his appearance to that of the offender. In the present case, it is our conclusion that none of these three elements 'has been come at by exploitation' of the violation of the defendant's Fourth Amendment rights." (*Id.* at p. 471.)

With respect to the first element, the *Crews* court explained the defendant's "presence in court [was] not traceable to any Fourth Amendment violation." (*Crews*, *supra*, 445 U.S. at p. 472.) The victim had notified authorities after the attack, described the assailant, and was fully cooperative. (*Id.* at p. 471.) "[T]he victim's identity was known long before there was any official misconduct . . . ." (*Id.* at p. 472.) Similarly here, defendants' presence in court was not traceable to the illegal detention. Alvarez immediately called police after the incident and gave police a description of the suspects. His presence in court was not the result of illegal conduct. Instead, he participated in the investigation before any illegal conduct occurred.

The second element pertains to Alvarez's and Mendoza's ability to identify Jeong and Kim from observations at the time of the crime. Alvarez had the opportunity to view

6

the suspects when they were in the black Honda and when they exited the car to assault him. Alvarez testified that the incident lasted eight to 10 minutes. Alvarez testified at the preliminary hearing that his in-court identification was based on his memory of the incident. Mendoza initially saw the black Honda stop, noticed the gun, and watched the entire event from across the street. The record does not show the in-court identifications were based solely on the suppressed field identifications. Finally, with respect to the third element, Alvarez and Mendoza were present in the courtroom to identify Kim and Jeong and compare defendants to the perpetrators of the crime. In sum, defendants fail to show the Fourth Amendment required suppressing the in-court identifications.

B. *Due Process*

The remaining question is whether the in-court identifications violated defendants' due process rights. "In order to determine whether the admission of identification evidence violates a defendant's right to due process of law, we consider (1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification." (*People v. Cunningham* (2001) 25 Cal.4th 926, 989 (*Cunningham*); see also *Manson v. Brathwaite* (1977) 432 U.S. 98, 114.) "'[R]eliability [of the eyewitness identification] is the linchpin' of that evaluation. Where the 'indicator's of [a witness'] ability to make an accurate identification' are 'outweighed by the corrupting effect' of law enforcement suggestion, the identification should be suppressed. [Citation.]" (*Perry v. New Hampshire* (2012) 565 U.S. __ [132 S.Ct. 716, 724-725].) To warrant reversal, there must be a "'substantial likelihood of irreparable misidentification' under a ""totality of the circumstances.""" (*Cunningham*, *supra*, at p. 990, quoting *Manson*, *supra*, at pp. 104-107.)

7

Here, there was no substantial likelihood of irreparable misidentification under a totality of the circumstances. As noted, Alvarez had extensive time to view the suspects both when they were in the car and when they assaulted him. Alvarez testified at the preliminary hearing based on his memory. At trial, Alvarez testified he was certain about his identifications. Although there was some confusion over whether Alvarez described the suspects as bald, Alvarez consistently testified he reported the suspects had short hair, and that description was confirmed by Officer Pak's testimony. After hearing Alvarez's in-court testimony, the court found him "credible and any inconsistent statements made in court were attributable to innocent misrecollections . . . ." Both Alvarez and Mendoza identified the same suspects. Mendoza also had the opportunity to view the suspects and watched as they assaulted Alvarez. Based on our record, defendants fail to show a substantial likelihood of an irreparable misidentification.[4]

## 2. Jeong Fails to Show Material Evidence Was Withheld

According to Jeong, the prosecutor withheld exculpatory, material evidence in violation of *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*). In *Brady*, the United States Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (*Id.* at p. 87.) Jeong argues the withheld evidence "would create a reasonable doubt – if not definitively prove – that Officer Pak was not even at the scene to take a description." As we explain, we disagree any *Brady* violation occurred. The evidence Jeong cites does not show Pak was absent from the scene on July 30.

### A. Background

Alvarez testified he spoke for about 30 minutes to three or four officers the night of the July 30 incident. Officer Ghaffarian testified it was approximately 1:00 a.m. when

---

[4]     Because we considered the issue on the merits, we need not consider Jeong's claim of ineffective assistance of counsel based on the same due process claim.

8

he received the call describing the robbery and assault. Officer Ghaffarian testified Officer Pak came to the scene while Ghaffarian was interviewing Alvarez.

Officer Pak's police report from August 7, 2010, indicated he responded at 1:45 a.m. to the July 30 incident. During cross-examination, Pak admitted the time on his report was erroneous. Pak was questioned extensively to determine whether he was at the scene of the incident on July 30. He was asked whether at approximately 1:00 a.m., he went to the location of the incident. Pak answered affirmatively, testifying he went there to assist the patrol officers. Pak testified he spoke to Alvarez. Alvarez was being interviewed by patrol officers when Pak arrived. Pak was at the scene for approximately five minutes. Pak testified that other than his report no document would show he was at the scene.

In pretrial proceedings, Officer Goldstein testified he and Officer Pak went to the assault and robbery scene.

Jeong was not provided the following documents prior to trial – an incident recall log and a daily field activities report. Jeong also states he did not receive a report documenting an unrelated driving under the influence investigation Officer Pak participated in that day. No document shows Pak was at the scene of the July 30 incident. No evidence shows a document should have recorded Pak's brief stop.

## B. Analysis

"The federal due process clause prohibits the prosecution from suppressing evidence materially favorable to the accused. The duty of disclosure exists regardless of good or bad faith, and regardless of whether the defense has requested the materials. [Citations.] The obligation is not limited to evidence the prosecutor's office itself actually knows of or possesses, but includes 'evidence known to the others acting on the government's behalf in the case, including the police.' [Citation.] [¶] For *Brady* purposes, evidence is favorable if it helps the defense or hurts the prosecution, as by impeaching a prosecution witness. [Citations.] Evidence is material if there is a reasonable probability its disclosure would have altered the trial result." (*People v.*

*Zambrano* (2007) 41 Cal.4th 1082, 1132, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421.)

Jeong fails to show the evidence underlying the alleged *Brady* violation was material. Stated otherwise, there is no reasonable probability its disclosure would have altered the trial result. The belatedly discovered evidence does not show Officer Pak was not at the scene. The undisputed trial testimony was that no document would be generated to demonstrate Pak was at the scene. No evidence shows Pak was required to log the stop into any record, and therefore the fact that he apparently did not do so is not indicative of his absence from the scene. Simply put, the documents Jeong cites do not refute Officers Pak's, Goldstein's, or Ghaffarian's testimony that Pak was at the scene and obtained a description from Alvarez. Because the withheld documents were not material, no *Brady* violation occurred.

### 3. Kim Fails to Show Evidentiary Error Requires Reversal

As noted, the court originally excluded Kim's Dodger shirt because it was obtained following an illegal detention. The court subsequently concluded Kim's defense counsel opened the door to admit evidence of the Dodger shirt by asking the following questions:

"Q  You have testified that based on your observation of Mr. Kim it was your recollection that he was wearing – and I think you characterized it as a blue Dodger shirt; correct?

"A  Yes, sir.

"Q  Long sleeved or short sleeved?

"A  It was [a] long sleeved shirt."

Pak was then given his report and asked to read the section on "clothing worn by the individuals you arrested." The face sheet to the report stated Kim wore "black shoes, blue jeans and a white shirt."

The Dodger shirt was brought to court and Alvarez identified it as the one Kim was wearing on July 30.

10

On appeal, Kim argues the court erred in allowing the prosecution to show Kim's Dodger shirt in court and allow Alvarez to identify it. Assuming such error, Kim was not prejudiced. Even without the actual shirt, there was extensive evidence that Kim was wearing a Dodger shirt on the night of the incident. Alvarez testified Kim was wearing a Dodger shirt. Mendoza testified one of the assailants wore a Dodger shirt. Pak testified Kim wore a Dodger shirt on the night he was arrested. No contrary evidence was introduced. The fact that the court allowed the admission of the shirt was therefore cumulative. Kim does not show reversal is warranted.

### 4. Instructions

The trial court did not instruct the jury on any lesser included offense. Defendants argue the trial court was required to instruct on the lesser included offenses of simple assault and battery. Defendants further contend the error in failing to so instruct requires the reversal of their convictions. We conclude the trial court should have sua sponte instructed on simple assault, but the error did not prejudice defendants.

"'[A] trial court must instruct on lesser included offenses, even in the absence of a request, whenever there is substantial evidence raising a question as to whether all of the elements of the charged offense are present.' [Citation.] Conversely, even on request, a trial judge has no duty to instruct on any lesser offense *unless* there is substantial evidence to support such instruction." (*Cunningham*, *supra*, 25 Cal.4th at p. 1008.) Thus, the issue was whether there was substantial evidence Kim or Jeong committed an assault but not an assault likely to cause great bodily injury.

Simple assault is a lesser included offense of aggravated assault. (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 747-748.) The distinction between simple assault and aggravated assault is the "force actually exerted by the defendant, not the amount of force that could have been used." (*Id*. at p. 748.) "Whether a fist used in striking a person would be likely to cause great bodily injury is to be determined by the force of the impact, the manner in which it was used and the circumstances under which the force was applied." (*Id*. at pp. 748-749.) There was evidence of a simple assault and the court erred in not giving that instruction. Alvarez testified four assailants inflicted eight blows.

11

He did not describe the force of those blows and the absence of any injury supports the inference that he blows were not with force likely to produce great bodily injury. This is not a case where the force inflicted injury suggesting it could only be substantial force. (See, e.g., *id.* at p. 749 [defendant hit victim with so much force that defendant suffered injuries]; see also *People v. Berry* (1976) 18 Cal.3d 509, 518-519 [defendant testified he choked victim until victim became unconscious].)

The error in failing to instruct the jury on simple assault was harmless. (See *People v. Breverman* (1998) 19 Cal.4th 142, 165 [failure to instruct on a lesser included offense "is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome"].) It is not reasonably probable jurors would have found defendants guilty of only a simple assault had they been properly instructed. Jurors were instructed that to find defendants guilty of assault with force likely to produce great bodily injury they were required to find "[t]he force used was likely to produce great bodily injury." Jurors also were instructed they had to find "[w]hen the defendant acted, he had the present ability to apply force likely to produce great bodily injury to a person." Thus, jurors necessarily concluded the force used was likely to produce great bodily injury.

Finally, defendants argue the trial court was required to sua sponte instruct the jury on the lesser included offense of battery. However, battery is not a lesser included offense of aggravated assault. A battery requires a touching. (Pen. Code, § 242.) An assault likely to cause great bodily injury may be committed without a touching. (See *In re Robert G.* (1982) 31 Cal.3d 437, 441; *People v. Fuller* (1975) 53 Cal.App.3d 417, 422.) Defendants do not argue battery was a simple assault as charged and the information demonstrates that it was not.[5] Because battery is not a lesser included offense, the trial court was not required to sua sponte instruct the jury on battery.

---

[5]    The aggravated assault was charged as follows: "On or about July 30, 2010, in the County of Los Angeles, the crime of assault by means likely to produce great bodily injury, in violation of Penal Code section 245(a)(1), a Felony, was committed by Daniel

12

### 5. *Kim's Conduct Credits*

Kim argues the version of Penal Code section 4019 that came into effect after he was sentenced should be applied retroactively to him to avoid a violation of the equal protection clause. Our Supreme Court has rejected this argument. (*People v. Brown* (2012) 54 Cal.4th 314.) Our high court concluded "equal protection does not require former section 4019 to be applied retroactively." (*Id.* at p. 330.) Under *Brown*, Kim was not entitled to additional conduct credits.

### DISPOSITION

The judgments are affirmed.

FLIER, J.

We concur:

BIGELOW, P. J.

GRIMES, J.

---

Kim, who did willfully and unlawfully commit an assault on Alejandro Alvarez by means of force likely to produce great bodily injury." (Capitalization omitted.)