Filed 11/30/21  P. v. Driskell CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C092490 |
| Plaintiff and Respondent, | (Super. Ct. No. 19F7023) |
| v. | |
| JASON SCOTT DRISKELL, | |
| Defendant and Appellant. | |

A jury found defendant Jason Scott Driskell guilty of a single count of assault with a deadly weapon after he hit the victim with a hammer.  On appeal, defendant contends the trial court erred when it failed to instruct the jury on the lesser included offense of simple assault.  He also argues the court incorrectly calculated his presentence custody credits and imposed an indefinite no-contact order as part of his sentence without any legal authority.  We conclude the trial court did not err in not instructing the jury on simple assault, but modify the judgment to correct the credits and strike the no-contact order.  As modified, the judgment is affirmed.

1

# FACTUAL AND PROCEDURAL BACKGROUND

The prosecution charged defendant with two counts of assault with a deadly weapon.  (Pen. Code, § 245, subd. (a)(1).)[1]  The prosecution also alleged defendant had a prior strike conviction for assault with a deadly weapon (§ 1170.12) and had a prior serious felony conviction (§ 667, subd. (a)(1)).  The first count alleged an assault against T.M. and the second count alleged an assault against D.B.

At trial, D.B. testified she was near the library when she saw defendant and T.M. arguing.  Defendant had a "drywall hammer" in his hand.[2]  When D.B. walked up to defendant, defendant drew his arm back to swing the hammer at T.M.[3]  D.B. then reached up and "put his hand down" with a "swatting motion," stopping defendant.  D.B. described defendant's swing as "at shoulder level or under shoulder level," and said defendant "swung like a girl," with a "[w]ide swing."

Defendant then hit D.B. in the head with the hammer, knocking her glasses off.  D.B. said she "saw stars" and sat down because she was afraid she might have a concussion.  Bystanders detained defendant, and D.B. thought they "were going to beat [defendant] up."  Afterwards, D.B. had a "great big black eye for a long time," and the injury left a "permanent mark" under her eye.  She also had a swollen wrist contusion.  Shortly after the incident, she told police officers defendant had swung the hammer at her three times.  The first time, he swung at her head, and she blocked the strike with her wrist.  The second time, she deflected the blow, and the third time, he struck her above the eye.  One police officer testified that he believed D.B. had been hit with the blunt end

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  Witnesses variously described the hammer as a "drywall hammer," "roofing hammer," or "hatchet."

[3]  T.M. did not testify at trial.

of the hammer, based on her injuries. The officer noted D.B. appeared to be "dazed," or "sort of confused," although she did not appear to be under the influence of anything.

Defendant testified in his own defense, saying he offered to share a joint with D.B. and T.M. They said something "very dismissive" to him, and he called D.B. a "fucking bitch." D.B. then told one of her friends to "[c]all the police. Tell them [defendant] hit me with the hammer." She told defendant he would "get a lot of time for this." Defendant explained D.B.'s injuries were sustained when she and one of her friends attempted to take the hammer away from defendant. D.B.'s friend and D.B. tried to grab the hammer, D.B.'s wrist came into contact with the bladed side of the hammer, and her friend's head collided with her face. D.B.'s friend punched defendant in the face. Defendant then fell to the ground and covered his head, and someone kicked him. Defendant denied swinging the hammer at anyone.

On cross-examination, defendant agreed the hammer could be used as a weapon that could "do a lot of damage" or kill someone. In rebuttal, the prosecution recalled the police officers who had testified earlier, and one opined that D.B.'s wrist injury was not consistent with a strike from the bladed end of the hammer.

Before instructing the jury, the trial court determined it would provide an instruction on the lesser included offense of simple assault (§ 240) for count 1, but not for count 2. The court explained the evidence could support the lesser included offense as to the assault against T.M. because D.B. testified defendant used "a relatively we[a]k swing towards" T.M. that was easily deflected by D.B., suggesting a jury could find the hammer had not been wielded in a way that would make it a "dangerous or . . . deadly weapon." In the assault against D.B., however, "the hammer was wielded in a very different way," such that the lesser included offense instruction was not warranted. Neither counsel requested the lesser included instruction for count 2. The court instructed the jury in conformance with its ruling.

3

The jury found defendant not guilty on count 1, but guilty on count 2. Defendant admitted the prior strike and serious felony conviction allegations. At sentencing, the court awarded 264 days of actual custody credit and 264 days of local conduct credit, for a total of 528 days of presentence custody credit. The court also ordered defendant to have "no contact with [D.B.]" The court did not specify the duration of the no-contact order or the legal authority under which the no-contact order was issued.

DISCUSSION

I

*Lesser Included Offense*

Defendant contends the trial court erred because it should have instructed the jury on simple assault (§ 240) as a lesser included offense of assault with a deadly weapon (§ 245, subd. (a)(1)) with respect to count 2. Defendant argues the court's failure to do so violated his rights under the state and federal Constitutions. Defendant's contentions are without merit.

A trial court must provide jury instructions on a lesser included offense " 'when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) "Thus, 'a trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support.' " (*People v. Smith* (2013) 57 Cal.4th 232, 240.) "We apply the independent or de novo standard of review to the failure by the trial court to instruct on an assertedly lesser included offense. [Citation.]" (*People v. Cole* (2004) 33 Cal.4th 1158, 1218.)

The parties agree simple assault is a lesser included offense of assault with a deadly weapon. (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 747.) "Section 240 defines the crime of simple assault as 'an unlawful attempt, coupled with a present

ability, to commit a violent injury on the person of another.' . . . No actual touching is necessary, but the defendant must do an act likely to result in a touching, however slight, of another in a harmful or offensive manner." (*People v. Wyatt* (2012) 55 Cal.4th 694, 702.) In contrast, assault with a deadly weapon requires the use of a " 'deadly weapon,' " which is " 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.' " (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029.) "Great bodily injury, as used in section 245, means significant or substantial injury. [Citation.] Because the statute speaks to the capability of inflicting significant injury, neither physical contact nor actual injury is required to support a conviction. [Citation.] However, if injuries do result, the nature of such injuries and their location are relevant facts for consideration in determining whether an object was used in a manner capable of producing and likely to produce great bodily injury." (*People v. Brown* (2012) 210 Cal.App.4th 1, 7.)

"Thus, the question posed by defendant's claim is whether a reasonable jury could have found that defendant committed only a simple assault and not an assault with a deadly or dangerous weapon or force likely to produce great bodily injury." (*People v. McDaniel, supra*, 159 Cal.App.4th at p. 748.) No evidence at trial supported the conclusion that defendant did attack D.B. but only with force that was not likely or capable of producing great bodily injury. D.B. testified defendant struck her in the head, knocking her glasses off and inflicting a "great big black eye," which would eventually leave a permanent mark on her face. She stated that she "saw stars," and a responding officer noted she appeared dazed or confused. She told the officer defendant attempted to hit her three times, striking her wrist and causing a contusion before striking her near her eye. Although defendant did not use the bladed end of the hammer to strike D.B., he did try to hit her in the head, and ultimately inflicted serious injury on her.

As the trial court correctly noted, defendant's attack on D.B. was factually distinguishable from his attack on T.M., both because the attack against T.M. was

comparatively weak and because no injury resulted. Contrary to defendant's assertion, this conclusion does not require any "weighing" of the evidence. There was no evidence that defendant committed only a simple assault against D.B., while there was at least some evidence that defendant made only a token assault on T.M. Thus, the trial court had no obligation to instruct the jury as to simple assault with respect to defendant's assault on D.B.[4] (*People v. Breverman, supra,* 19 Cal.4th at p. 154.)

## II

### *Presentence Credits*

Defendant asserts the trial court miscounted the number of days of presentencing credit he received. The People agree, saying defendant was entitled to a total of 628 presentence custody credits. We agree with the parties.

Credit for time served before sentencing is calculated by the sentencing court at the time of sentencing, with the total number of days recorded in the abstract of judgment. (Cal. Rules of Court, rule 4.310; *People v. Duff* (2010) 50 Cal.4th 787, 793, citing § 2900.5, subd. (d).) Police arrested defendant on September 11, 2019, and the trial court sentenced him on July 20, 2020. The court made an apparent mathematical error and determined that this period of time amounted to 264 days of actual custody credit. It is actually 314 days. Defendant was also entitled to 314 days of local conduct credit, for a total of 628 days of presentence custody credit. (*People v. Whitaker* (2015) 238 Cal.App.4th 1354, 1358.) We will order the judgment modified.

## III

### *No-contact Order*

Defendant argues the trial court lacked the authority to issue a sentencing order precluding defendant from any contact with D.B. The People agree the order "should be

---

[4] Because we find no violation of state law, we also conclude there was no constitutional violation. (*People v. Breverman, supra*, 19 Cal.4th at p. 165.)

6

stricken," finding no statutory authority that would authorize the order. We agree with the parties.

Several statutes permit entry of a protective order under certain circumstances in a criminal case. For example, section 136.2, subdivision (a) authorizes issuance of a protective order during the duration of criminal proceedings. Yet, this statute does not authorize issuance of a protective order against a defendant who has been sentenced to prison unless the defendant has been convicted of domestic violence. Section 1203.1, subdivision (i)(2), which authorizes a no-contact order in some sex offense cases, only applies where the defendant is granted probation. Section 1201.3, subdivision (a) authorizes a no-contact order for a period of up to 10 years but only when the defendant was convicted of a sexual offense involving a minor victim. (See *People v. Robertson* (2012) 208 Cal.App.4th 965, 996.)

Here, the trial court did not specify the statutory authority authorizing it to issue the no-contact order, and the prosecutor did not make any offer of proof or otherwise justify the need for a no-contact order. Nor was defendant convicted of a crime enumerated in sections 136.2 or 1201.3, or placed on probation under section 1203.1. We conclude the no-contact order must be stricken.

## DISPOSITION

The judgment is modified to strike the no-contact order and award defendant 628 days of presentence custody credit. The trial court is directed to prepare an amended

7

abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.


/s/
HOCH, J.


We concur:


/s/
MAURO, Acting P. J.


/s/
RENNER, J.


8