[No. H029860. Sixth Dist. Jan. 31, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
GREG McDANIEL, Defendant and Appellant.

738

## COUNSEL

Edward Mahler, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Dorian Jung and Sharon R. Wooden, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RUSHING, P. J.—**

### STATEMENT OF THE CASE

A jury found defendant Greg McDaniel guilty of assault by a prisoner and aggravated assault, and the court later found that he had a prior strike conviction. (Pen. Code, §§ 245, subd. (a)(1), 4501, 1170.12, subd. (c)(1).)[1]

---

[1] All further unspecified statutory references are to the Penal Code.

On appeal from the judgment, defendant claims the trial court erred in failing to instruct the jury on the lesser included offense of simple assault. He also claims he was not properly convicted of both aggravated assault and assault by a prisoner. Last, he claims he was denied due process because he was shackled during trial without a finding of cause.

We agree that defendant was denied due process and reverse the judgment.[2]

### The Offenses

Around 10:12 a.m. on August 4, 2003, Correctional Officer Aaron Anderson was in a guard tower at Soledad prison when he observed a fight in progress in Bravo yard down below. He testified that he saw defendant and another inmate, Augustine Holguin, punching and kicking a third inmate, Michael Odom.[3] Officer Anderson immediately reported the fight over the radio. Sergeant Hancock and Officer Barba were first to respond. As they approached, they saw defendant punching Odom with closed fists. They did not see any kicking. Officer James Daw followed. He testified that he saw Odom being punched and kicked. However, he did not mention the kicking in his written report.

When Sergeant Hancock reached the fighters, he shouted, "Get down. Pepper spray. Get down." Defendant continued to punch Odom, and Sergeant Hancock sprayed him. Even after all three inmates lay down, defendant continued to hit Odom, and Sergeant Hancock sprayed him again.

Odom suffered discoloration, redness, abrasions, contusions, and scratches on his face and body. He also had a bloody nose and two lacerations on his neck. Although the treating physician described the longer laceration as "superficial," it nevertheless required five stitches to close.

Dr. Alan Rosenthal, who did not treat Odom, testified that the longer laceration was serious because it was so close to the jugular vein, the carotid

---

[2] In addition to this appeal, defendant filed a petition for a writ of habeas corpus in which he claims that trial counsel rendered ineffective assistance by failing to object to defendant's being shackled; dressed in a prison jumpsuit; and escorted in shackles to the witness stand by a uniformed guard, who remained seated with him while he testified. We ordered that the petition would be considered along with the appeal. We dispose of the petition by separate order.

[3] The parties stipulated that defendant was a prison inmate, who was not serving a life sentence.

artery, and facial nerves. He opined that it was caused by a sharp instrument, such as a knife, razor, a piece of glass, or a sharpened piece of plastic, and could not have been caused by hands or feet. No weapon was ever found.

Defendant suffered a fractured knuckle during the fight.

*The Defense*

Defendant testified that he was in the yard exercising when Odom punched him in the back of the head, knocking him down. As defendant got up, Odom moved to his side, and defendant grabbed and lifted him up by the leg, and they both fell on a bench. They got up and started fighting. Defendant landed some punches, trying to defend himself, but did not kick him. Odom was unable to hit defendant cleanly but kept coming at defendant. At one point other inmates surrounded them, and Holguin, whom defendant did not know, joined the fight, hitting Odom. Odom kept fighting.

Defendant testified that he did not have a weapon or see one. He acknowledged that he and Odom had had an unfriendly exchange at a party in Modesto sometime before they were incarcerated.

SHACKLING

Defendant contends that he was denied due process because he was visibly shackled at trial.

The record reveals that outside the presence of the jury, defense counsel asked that at least one of defendant's hands be unshackled to allow him to take notes and assist in his defense.[4] The trial court granted the request. Defendant testified at trial, and in later instructing the jury, the court advised jurors to disregard and not consider the fact that defendant was shackled for any purpose.[5] (CALJIC No. 1.04.)

---

[4] The Attorney General concedes that counsel's request was sufficient to preserve his due process claim on appeal. (*People v. Vance* (2006) 141 Cal.App.4th 1104, 1113 [46 Cal.Rptr.3d 585].)

[5] The court stated, "The fact that physical restraints have been placed on the defendant must not be considered by you for any purpose. They are not evidence of guilt and must not be considered by you as any evidence that he is more likely to be guilty than not guilty. [¶] You must not speculate as to why the restraints have been used in determining the issues in this case. Disregard this matter entirely."

 In *Deck v. Missouri* (2005) 544 U.S. 622 [161 L.Ed.2d 953, 125 S.Ct. 2007] (*Deck*), a majority of the United States Supreme Court held that the use of physical restraints on a criminal defendant visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial, such as courtroom security and the risk of escape, violates a defendant's rights under the Fifth and Fourteenth Amendments. (544 U.S. at p. 624.) Writing for the majority, Justice Breyer explained that "the criminal process presumes that the defendant is innocent until proved guilty. [Citation.] Visible shackling undermines the presumption of innocence and the related fairness of the factfinding process. [Citation.]" (*Id.* at p. 630.) He further noted that unjustified shackling can interfere with the defendant's right to counsel and a meaningful defense. (*Id.* at p. 631.) Last, he asserted that the routine use of shackles in front of a jury undermines the dignity of the courtroom and the ability of the judicial system to maintain public confidence in its ability and authority to provide justice. (*Id.* at pp. 626, 630.)

 Given the constitutional rights at stake, the majority held that "where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation. The State must prove 'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.' [Citation.]" (*Deck, supra,* 544 U.S. at p. 635, quoting *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824].)

California has long followed similar principles. In *People v. Harrington* (1871) 42 Cal. 165 (*Harrington*), the California Supreme Court stated that that "any order or action of the Court which, without evident necessity, imposes physical burdens, pains and restraints upon a prisoner during the progress of his trial, inevitably tends to confuse and embarrass his mental faculties, and thereby materially to abridge and prejudicially affect his constitutional rights of defense; and especially would such physical bonds and restraints in like manner materially impair and prejudicially affect his statutory privilege of becoming a competent witness and testifying in his own behalf." (*Id.* at p. 168; accord, *People v. Ross* (1967) 67 Cal.2d 64, 72 [60 Cal.Rptr. 254, 429 P.2d 606] [absent danger of escape, defendant entitled to appear without shackles]; *People v. Burnett* (1967) 251 Cal.App.2d 651, 655 [59 Cal.Rptr. 652] [unnecessary show of restraint of an accused in the presence of the jurors is prejudicial].)[6]

---

[6] The California Legislature has also limited the amount of restraint that may be used against those charged with offenses. Section 688 provides, "No person charged with a public offense may be subjected, before conviction, to any more restraint than is necessary for his detention to answer the charge." (See former § 13, Stats. 1872.)

■ In *People v. Duran* (1976) 16 Cal.3d 282 [127 Cal.Rptr. 618, 545 P.2d 1322] (*Duran*), the court reaffirmed "the rule that a defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints. [Citation.]" (*Id.* at pp. 290–291, fn. omitted.) The court opined that "possible prejudice in the minds of the jurors, the affront to human dignity, the disrespect for the entire judicial system which is incident to unjustifiable use of physical restraints, as well as the effect such restraints have upon a defendant's decision to take the stand, all support our continued adherence to the *Harrington* rule." (*Id.* at p. 290; accord, *People v. Hill* (1998) 17 Cal.4th 800, 841 [72 Cal.Rptr.2d 656, 952 P.2d 673].) In *People v. Cox* (1991) 53 Cal.3d 618 [280 Cal.Rptr. 692, 809 P.2d 351], the court later explained that manifest need exists "*only* upon a showing of unruliness, an announced intention to escape, or '[e]vidence of any nonconforming conduct or planned nonconforming conduct, which disrupts or would disrupt the judicial process if unrestrained . . . .' " (*Id.* at p. 651, italics added.) Thus, the mere fact that the defendant is a prison inmate, standing alone, does not justify the use of physical restraints. "[T]he trial judge must make the decision to use physical restraints on a case-by-case basis. The court cannot adopt a general policy of imposing such restraints upon prison inmates charged with new offenses unless there is a showing of necessity on the record." (*Duran, supra*, 16 Cal.3d at p. 293.)

■ In *Duran,* the court further ruled that because the imposition of restraints is a "judicial function," the trial court has a sua sponte duty "to initiate whatever procedures [it] deems sufficient in order that it might make a due process determination of record that restraints are necessary." (*Duran, supra*, 16 Cal.3d at p. 293, fn. 12.) If the defendant is to be restrained, the court must make a record concerning the justification, and if the restraints are visible to the jury, the trial court must instruct the jury sua sponte that the restraints should have no bearing on the determination of the defendant's guilt. (*Id.* at pp. 291–292; see *People v. Mar* (2002) 28 Cal.4th 1201 [124 Cal.Rptr.2d 161, 52 P.3d 95] [reaffirming principles outlined in *Duran*].) The *Duran* court also reaffirmed the rule that a defendant waives appellate claims concerning shackles unless he or she objected below.[7] (*Duran, supra*, 16 Cal.3d at p. 289, citing *People v. Chacon* (1968) 69 Cal.2d 765, 778 [73 Cal.Rptr. 10, 447 P.2d 106]; accord, *People v. Alvarez* (1996) 14 Cal.4th 155, 192, fn. 7 [58 Cal.Rptr.2d 385, 926 P.2d 365]; *People v. Stankewitz* (1990) 51 Cal.3d 72, 95 [270 Cal.Rptr. 817, 793 P.2d 23]; *People v. Walker* (1988) 47 Cal.3d 605, 629 [253 Cal.Rptr. 863, 765 P.2d 70].)

---

[7] The rule is also applied in federal courts. (E.g., *King v. Rowland* (9th Cir. 1992) 977 F.2d 1354, 1357; cf. *Estelle v. Williams* (1976) 425 U.S. 501, 512–513 [48 L.Ed.2d 126, 96 S.Ct. 1691] [prior objection required to preserve claim concerning prison garb].)

In *Duran*, a prison inmate was stabbed several times, and the defendant immediately fled the scene. He was caught, and police found a bloody scissors nearby, although the blood could not be analyzed. The victim testified that the defendant was not his assailant, and no one identified the defendant as the assailant. However, one inmate said he saw the defendant make arm motions toward the victim immediately before the victim collapsed. The defendant was charged with assault with a deadly weapon and possession of a dirk or dagger. At trial, the court summarily denied his motion to appear in civilian clothes without shackles but agreed to free one of his hands so that he could take notes during trial. The defendant testified in his shackles. He testified that he thought he would be adversely affected if he became involved in an investigation of the stabbing and so he fled, hoping to avoid any connection to the incident and investigation. (*Duran, supra*, 16 Cal.3d at pp. 287–288.)

The California Supreme Court held that the trial court abused its discretion in denying the defendant's motion because the court provided no reasons on the record for shackling him. "There is no showing that defendant threatened to escape or behaved violently before coming to court or while in court. The fact that defendant was a state prison inmate who had been convicted of robbery and was charged with a violent crime did not, without more, justify the use of physical restraints. As our discussion heretofore indicates, the trial judge must make the decision to use physical restraints on a case-by-case basis. The court cannot adopt a general policy of imposing such restraints upon prison inmates charged with new offenses unless there is a showing of necessity on the record. The court's summary denial of the motion to release defendant from his shackles was not based upon such a showing of record and implies a general policy of shackling all inmate defendants accused of violent crimes." (*Duran, supra*, 16 Cal.3d at p. 293; see *People v. Anderson* (2001) 25 Cal.4th 543, 595 [106 Cal.Rptr.2d 575, 22 P.3d 347] ["[a] shackling decision must be based on facts, not mere rumor or innuendo . . ."].)

The circumstances here are similar to those in *Duran*. We may reasonably infer that the jury knew and saw that defendant was shackled. As in *Duran*, defendant was initially shackled, and he was allowed only to have one hand freed. He then testified on the stand. Later, the court expressly advised jurors to disregard defendant's shackles. Such an advisement is given only when shackles are visible.[8] The Attorney General concedes that it is reasonable to infer that defendant's shackles became visible to the jury.

---

[8] The Use Note for CALJIC No. 1.04 states, "If the defendant has been restrained, but the restraints are concealed from the juror's view, do not give this instruction, unless requested by the defendant. If the restraints are in the view of the jury, the court has a sua sponte duty to instruct the jury that the restraints have no bearing on the determination of the defendant's guilt. [Citations.]" (Use Note to CALJIC No. 1.04 (Fall 2006 ed.) p. 13.)

Notwithstanding its duty, the trial court did not initiate any procedure to determine whether shackling was necessary or make any findings on the record to justify the shackling.

Citing the probation report, the Attorney General asserts that defendant was shackled "because he beat, kicked, and slashed the throat of a fellow inmate who did not try to fight back. [Defendant] was in prison for stalking, making terrorist threats, and shooting [at an] inhabited dwelling. His crimes were committed against the mother of his child, and he was forbidden by criminal protective order from having contact with her or his minor child. Furthermore, [defendant] was a member of the Norteno prison gang, and his continued assault upon Odom despite chemical and physical restraint by prison staff showed that he had 'succumbed to an institutionalized mentality' and 'evolved into a violent and predatory offender who represented a continuing threat to society as a whole.' "

Even if we assume for purposes of argument only that this information would have justified shackling defendant had the court noted it on the record after a formal determination, the Attorney General cites no authority for the proposition that information collected in a probation report prepared *after* trial may be used to retrospectively justify the shackling of a defendant where the trial court fails to make a determination on the record before trial. We decline to adopt such an approach.

Under the circumstances, *Duran* compels the conclusion that the trial court abused its discretion. As noted, unjustified shackling is error of federal constitutional dimension and compels reversal unless the state demonstrates beyond a reasonable doubt that the shackling did not contribute to the verdict. (*Deck, supra*, 544 U.S. at p. 635.)

The Attorney General argues that the error was harmless beyond a reasonable doubt because defendant was fully able to communicate with defense counsel, he had one hand free to take notes, the jury inevitably learned that he was a prison inmate charged with assaulting another inmate, the court admonished the jury to disregard his restraints, and the evidence of guilt was overwhelming. We do not find this analysis persuasive.

It is true that even if the jury had not seen defendant in shackles, it would have inevitably learned that defendant was a prison inmate. However, we do not find the effect of knowing that a defendant is a prison inmate to be

equivalent to the impact of being present in court with a visibly shackled defendant. Nor does the knowledge that defendant was a prison inmate have a tendency to lessen the prejudicial reactions that jurors might have to seeing a defendant in shackles. Furthermore, it is not the fact that the defendant is a prison inmate that makes shackling prejudicial; rather, it is the jurors' visual, psychological, and emotional response to seeing a defendant so physically restrained and differentiated from everyone else and the natural tendency to wonder whether the defendant is a violent and dangerous person, and worry about safety. As the majority in *Deck* noted, the negative distraction caused by seeing a shackled defendant undermines the presumption of innocence and the fairness of the factfinding process. (*Deck, supra,* 544 U.S. at p. 630.)

Here, the unjustified shackling created great potential for prejudice. Contrary to the Attorney General's claim, the evidence of guilt was far from overwhelming. Although it is undisputed that defendant punched Odom, the officers who saw the fight disagreed concerning whether defendant kicked Odom; and, more importantly, none of the officers saw how the fight started. Moreover, the prosecution presented no evidence showing that defendant was the initial aggressor or clearly rebutting his claim that Odom struck him first and reacted in self-defense. And, as noted, no deadly or dangerous cutting or stabbing-type weapon or instrument was found.

We further note that if defendant wanted to present his defense, he had to testify himself. The record on appeal does not suggest that defendant was released from his shackles when he testified. Thus, the fact that he chose to testify does not suggest that visible, unjustified shackling did not undermine the presumption of innocence or affect the fairness of his trial. On the contrary, defendant's guilt or innocence hinged on how jurors perceived his credibility and testimony, and those perceptions were highly vulnerable to the impact of seeing defendant in shackles.

We acknowledge that the court instructed the jury to disregard defendant's shackles, and, as a general rule, we may presume that jurors can follow such an admonition. (See *People v. Davenport* (1995) 11 Cal.4th 1171, 1210 [47 Cal.Rptr.2d 800, 906 P.2d 1068].) However, the court admonished the jury *after* defendant had testified and counsel had given their closing arguments. Thus, when defendant was giving his side of the story and presenting his defense, the jurors were free to wonder about his shackles, worry about him and their safety, and allow that distraction to taint their initial reactions to him and his testimony.

While we consider it reasonable to presume that jurors can follow an admonition to disregard shackles that is given at the beginning of trial, before they have heard any evidence, we question whether it is reasonable to presume that jurors can and will follow such an admonition when it is given after the defendant has testified and they have already had a chance to react to and draw negative inferences from seeing him or her shackled. Thus, here, the general presumption that jurors can and do follow admonitions does not substantially buttress the Attorney General's position.[9]

■ In sum, the Attorney General has not convinced us that requiring defendant to wear shackles during trial without adequate justification did not contribute to the verdict, and we do not find that the trial court's abuse of discretion was harmless beyond a reasonable doubt. Accordingly, we reverse the judgment.

## INSTRUCTIONS ON SIMPLE ASSAULT

Defendant contends the court erred in failing to instruct on the lesser offense of simple assault (§ 240). Although we reverse the judgment, we address this claim for future guidance in the event of a retrial.

■ The trial court has a duty to instruct the jury sua sponte on lesser included offenses when "substantial evidence rais[es] a question as to whether all of the elements of the charged offense are present." (*People v. Lewis* (2001) 25 Cal.4th 610, 645 [106 Cal.Rptr.2d 629, 22 P.3d 392]; see *People v. Breverman* (1998) 19 Cal.4th 142, 162 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) Absent substantial evidence a court need not give such instructions, even upon request. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1008 [108 Cal.Rptr.2d 291, 25 P.3d 519].)

■ The People concede, and we agree, that simple assault (§ 240) is a lesser included offense of aggravated assault (§ 241, subd. (a)(1)) and assault by a prisoner (§ 4501). The elements of simple assault are included in the elements of aggravated assault and assault by a prisoner, and therefore, one cannot commit the latter offenses without also committing a simple assault.

---

[9] We also observe that if reviewing courts automatically find that an admonition and presumption that jurors follow it cure the failure to make a determination that shackling is necessary, trial courts could shackle prison inmates as a matter of routine, knowing that a subsequent admonition and appellate presumption would in most cases render any abuse of discretion harmless. As noted, however, routine shackling without an individualized justification is contrary to the procedures outlined by the United States and California Supreme Courts. Moreover, a blanket application of the presumption could, as an unintended consequence, undermine the trial court's sua sponte obligation to make a determination on the record that shackling is reasonably necessary.

(*People v. Carmen* (1951) 36 Cal.2d 768, 775 [228 P.2d 281] ["Assault with a deadly weapon is nothing more than an assault where there is used either a deadly weapon or any means of force likely to produce 'great' bodily injury."], disapproved on other grounds in *People v. Flannel* (1979) 25 Cal.3d 668, 685 [160 Cal.Rptr. 84, 603 P.2d 1]; *People v. Yeats* (1977) 66 Cal.App.3d 874, 879 [136 Cal.Rptr. 243] [simple assault included in aggravated assault]; see *People v. Lopez* (1998) 19 Cal.4th 282, 288 [79 Cal.Rptr.2d 195, 965 P.2d 713] ["if a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former . . ."].) Thus, the question posed by defendant's claim is whether a reasonable jury could have found that defendant committed only a simple assault and not an assault with a deadly or dangerous weapon or force likely to produce great bodily injury.

Although Dr. Rosenthal testified that the long laceration on Odom's neck was caused by a sharp instrument, such as a knife, razor, a piece of glass, or a sharpened piece of plastic and could not have been caused by hands or feet, the jury implicitly rejected his opinion and expressly found instead that the assault was *not* committed with a deadly or dangerous weapon.[10] Accordingly, we focus on whether a jury could have found a simple assault and not an assault by force likely to produce great bodily injury.

■ Section 245 "prohibits an assault by means of force *likely* to produce great bodily injury, not the use of force which does in fact produce such injury. While . . . the results of an assault are often highly probative of the amount of force used, they cannot be conclusive." (*People v. Muir* (1966) 244 Cal.App.2d 598, 604 [53 Cal.Rptr. 398], some italics omitted.) Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate. (See *People v. Covino* (1980) 100 Cal.App.3d 660, 668 [161 Cal.Rptr. 155]; CALJIC No. 9.02.) " 'The crime . . . , like other assaults, may be committed without infliction of any physical injury, and even though no blow is actually struck. [Citation.] The issue, therefore, is not whether serious injury was caused, but whether the force used was such as would be likely to cause it.' " (*People v. Duke* (1985) 174 Cal.App.3d 296, 302 [219 Cal.Rptr. 873], italics omitted.) The focus is on the force actually exerted by the defendant, not the amount of force that could have been used. (*Id.* at p. 303.) The force likely to produce bodily injury can be found where the attack is made by use of hands or fists. (*People v. Kinman* (1955) 134 Cal.App.2d 419, 422 [286 P.2d 28].) Whether a fist used in striking a person

---

[10] This witness never saw or treated the victim. He had no personal knowledge of the wound on which he opined.

would be likely to cause great bodily injury is to be determined by the force of the impact, the manner in which it was used and the circumstances under which the force was applied. (*Id.* at p. 419.)

It is undisputed that defendant and Holguin repeatedly punched Odom about the head and upper body with closed fists. Defendant punched Odom with such force that he fractured his knuckle. Odom suffered abrasions, contusions, and scratches on his face and body; a bloody nose; and two lacerations on his neck, one of which required five stitches. It is also undisputed that defendant continued to punch Odom even after officers had intervened. Thus, but for the officers' intervention, defendant and Holguin's assault would have continued.

We do not find that the evidence warranted instructions on simple assault. If, as the jury implicitly here found, defendant did not act in self-defense, then the undisputed evidence introduced at defendant's trial showed no less than an assault with force likely to produce great bodily injury. Simply put, defendant hit Odom with enough force to suffer great bodily injury himself: a fractured knuckle. Accordingly, we do not find that a jury could reasonably conclude that that force applied to Odom's face and head was not likely to cause him to also suffer great bodily injury.

### MULTIPLE CONVICTIONS

Defendant contends that he could not properly be convicted of both aggravated assault and assault by a prisoner because the former is necessarily included in the latter. The Attorney General concedes the issue. Again, we address this claim for purposes of guidance.

It is settled that one cannot be convicted of two offenses which arise from a single criminal act where one offense is necessarily included in the other. (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034 [16 Cal.Rptr.3d 902, 94 P.3d 1098]; *People v. Pearson* (1986) 42 Cal.3d 351, 355 [228 Cal.Rptr. 509, 721 P.2d 595].) Here, both sections 245, subdivision (a)(1) and 4501 proscribe the commission of an assault with a deadly weapon or by any means of force likely to produce great bodily injury. Section 4501 adds one more element: the perpetrator must be a person incarcerated in state prison. Thus, a violation of section 245, subdivision (a)(1) is necessarily included in section 4501 because one cannot commit the latter offense without also committing the former. Accordingly, defendant may not be convicted of both aggravated assault and assault by a prisoner.

## Disposition

The judgment is reversed.

Premo, J., and Elia, J., concurred.