Filed 2/2/16  P. v. Boyd CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RICKEY DONNELL BOYD,<br><br>    Defendant and Appellant. | B254689<br><br>(Los Angeles County<br>Super. Ct. Nos. NA097138, NA089854)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on January 7, 2016, be modified as follows:

1.      At the end of the first full sentence on page 3 ending with "and vacate the sentence in the probation case," add as footnote 2 the following footnote, which will require renumbering of all subsequent footnotes:

**2** The reversal of the judgment of conviction and vacation of the sentence in the probation case does not affect the underlying finding of a probation violation in case number NA089854.

2. On page 12, the second sentence of the third full paragraph, the word "arguably" is to be inserted between the words "was" and "'overwhelming,'" so that the sentence reads:

> Although the audio and video evidence, along with Carter's testimony in support of counts 1 and 2 was arguably "overwhelming," the evidence of appellant's guilt on count 3, possession for sale, was not.

> There is no change in the judgment.
> Respondent's petition for rehearing is denied.

CHANEY, Acting P. J.    JOHNSON, J.    LUI, J.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B254689 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. NA097138, NA089854) |
| v. | |
| RICKEY DONNELL BOYD, | |
| Defendant and Appellant. | |

APPEAL from judgments of the Superior Court of Los Angeles County.  Tomson T. Ong, Judge.  Reversed (No. NA097138) and sentence vacated (No. NA089854).

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, and Gary A. Lieberman, Deputy Attorney General, for Plaintiff and Respondent.

_____

Rickey Donnell Boyd appeals from the judgment entered following a jury trial in which he was convicted of two counts of sale of cocaine base in violation of Health and Safety Code section 11352, subdivision (a) (counts 1 and 2), and one count of possession for sale of cocaine base in violation of section 11351.5 (count 3).[1] The jury also found true the allegations that appellant suffered four prison priors within the meaning of Penal Code section 667.5, subdivision (b) and four prior convictions for drug offenses under section 11370.2, subdivision (a). Appellant was sentenced on the current offense to county jail for a total term of 23 years 8 months. (Super. Ct. L.A. County (No. NA097138).) (Pen. Code, § 1170, subd. (h)(1).) In addition, the court resentenced appellant to a consecutive term of 1 year 8 months in county jail in a probation violation matter. (Super. Ct. L.A. County (No. NA089854).)

Appellant contends: (1) the trial court abused its discretion by removing appellant from the courtroom during trial without adequate justification, thereby violating appellant's constitutional rights and requiring reversal of appellant's conviction; (2) the trial court's failure to make the requisite finding of need to justify appellant's shackling during trial constituted an abuse of discretion and violation of appellant's constitutional rights, mandating reversal of appellant's conviction; (3) the cumulative effect of the erroneous shackling and courtroom removal requires reversal; (4) the trial court abused its discretion in failing to substitute counsel for appellant, thereby violating appellant's constitutional rights and mandating reversal of appellant's conviction; (5) the trial court erred in sentencing appellant to county jail for 23 years 8 months rather than imposing a split sentence under the terms of realignment; (6) the one-year enhancement, imposed under Penal Code section 667.5, subdivision (b) in appellant's probation violation case, must be vacated, and appellant's sentence in that matter modified to one year.

We hold that the trial court's failure to make the requisite finding of need to justify appellant's shackling during trial constituted an abuse of discretion and violation of

---

[1] Undesignated statutory references are to the Health and Safety Code.

appellant's constitutional rights. Accordingly, we reverse the judgment of conviction and vacate the sentence in the probation case.

## FACTUAL BACKGROUND

In September 2013, Long Beach police officer Jason Kirk was conducting an undercover narcotics investigation with a police informant, Earl Carter. Officer Kirk had worked with Carter on over 200 drug investigations in which Carter would approach a subject to buy narcotics as Officer Kirk watched from a nearby location.

On September 24, Officer Kirk searched Carter for contraband, equipped him with an audiovisual recording device, and gave him $40. The officer then dropped Carter off in a high narcotics area and parked across the street, keeping Carter in his sight. Officer Kirk watched and listened over the radio as Carter approached appellant and asked him for a "dub" ($20 worth of narcotics). Carter and appellant negotiated a deal for $40 worth of crack cocaine, and appellant gave Carter his cell phone number. Appellant left and walked around the corner to an SUV. A few minutes later, appellant returned with "one big golf ball" of rock cocaine weighing .35 grams, which he handed to Carter.

On October 2, 2013, Officer Kirk directed Carter to call the number appellant had given him to arrange another $40 purchase of crack cocaine. When Carter met appellant at the agreed location, appellant did not have the drugs with him. Appellant made a phone call and walked out of view. Appellant returned on a bicycle and told Carter he would find the cocaine on a "brick pole" down the street. Carter gave appellant the $40 and retrieved two unpackaged rocks of cocaine with a total weight of .302 grams from the top of a brick pillar.

On October 10, 2013, Officer Kirk had Carter call appellant to arrange another meeting to purchase $40 worth of cocaine. Police arrested appellant at the location where Carter and appellant had agreed to meet. During the search incident to appellant's arrest police recovered two rocks of cocaine in plastic bindles in appellant's pocket weighing .307 grams, and two loose rocks of cocaine weighing .263 grams in one of appellant's socks. Officer Kirk opined that appellant possessed this cocaine for purposes of sale and

3

not for personal use.[2]  Police also recovered a cell phone which was determined to have the same phone number Carter had used to call appellant.

Appellant testified that he knew Carter from the streets and had smoked cocaine with him in the past.  He denied ever selling drugs to Carter, stating that Carter always had his own cocaine which he had given to appellant on several occasions.  According to appellant, Carter had given him the four rocks of cocaine he had at his arrest.

Appellant admitted a 1986 conviction for selling cocaine, but did not recall any such convictions in 1997 or 2004.  Appellant suffered multiple narcotics convictions from 1986 to 2011, and did not remain free of prison custody for five years or more since first entering the prison system in 1986.  Five of appellant's prior convictions were for simple possession.

## DISCUSSION

### The Trial Court's Failure to Make the Requisite Finding of Manifest Need to Justify Appellant's Shackling During Trial Constituted an Abuse of Discretion.  The Resulting Violation of Appellant's Federal Constitutional Rights Requires Reversal of his Conviction

Appellant contends that the trial court abused its discretion and violated his constitutional rights by requiring him to appear before the jury and testify in shackles without a finding of manifest need or adequate justification for the visible restraints. Appellant maintains that the error resulted in a trial so unfair that it amounted to a denial

---

[2] Officer Kirk based his opinion on several factors:  appellant had no drug paraphernalia with him when he was arrested; at booking appellant did not indicate any employment; the individual rocks in appellant's possession were broken up into four distinct rocks which would facilitate sales to multiple people; during Carter's first buy, another person added $10 to Carter's $40 to get a larger quantity of drugs; appellant appeared to be conducting drug transactions with other people; appellant sold drugs to Carter on two occasions; and after the police had taken appellant's cell phone, it rang constantly.

of due process requiring reversal. Appellant further cites defense counsel's vindictive decision to "unbifurcate" the trial on the nine alleged prior convictions as evidence of an irreconcilable conflict between appellant and his trial counsel which resulted in ineffective representation and a violation of appellant's constitutional rights.

Although the trial court was dealing with an obviously obstreperous defendant who seemed bent on disobeying the court's orders and disrupting the proceedings, we nevertheless conclude that the trial court's failure to make the requisite finding of manifest need to justify the use of physical restraints constituted an abuse of discretion. There was no showing that appellant presented any security or escape risk or that visible restraints were the least obtrusive measure that would be effective in preventing appellant from disrupting the proceedings. Accordingly, the lack of adequate justification for shackling appellant resulted in a violation of due process. We further conclude that the harm engendered by trial counsel's inexplicable decision to "unbifurcate" the trial on the priors exacerbated the prejudice caused by the unjustified shackling and significantly contributed to the overall unfairness of the proceedings in violation of appellant's due process rights.

Because the state cannot prove beyond a reasonable doubt that the error did not contribute to the verdict, we must reverse.[3] (See *Deck v. Missouri* (2005) 544 U.S. 622, 635 [125 S.Ct. 2007] (*Deck*); *People v. Duran* (1976) 16 Cal.3d 282, 291–292 (*Duran*); *People v. McDaniel* (2008) 159 Cal.App.4th 736, 742 (*McDaniel*).)

### A. *Relevant Background*

During a discussion of motions in limine prior to trial, appellant interrupted the proceedings, prompting the court to warn that further vocal outbursts would result in his removal from the courtroom. The next day during trial appellant interrupted the testimony of police informant Earl Carter: "He's high on crack cocaine right now. He is

---

[3] In light of our conclusion that the trial court's unwarranted imposition of physical restraints requires reversal, we need not address appellant's remaining claims.

twitching," "I want to speak. He is high on crack right now. Your Honor, look how he is moving." After the jury left the courtroom, the court warned appellant, "The next time you blurt out, you're going to be removed from this courtroom and will not be part of the proceedings." Appellant indicated he understood the court's warning. The court admonished the jury to disregard the outburst.

The next morning as the court was welcoming the jury into the courtroom, appellant blurted out, "I need a *Marsden* motion." The court responded, "Not at this time." The exchange continued:

"[Appellant]: They're calling me a pussy.

"The Court: I warned you that you cannot articulate things in the courtroom. You are doing that and disrupting the proceedings. I'm going to remove you from the courtroom at this time because you are disrupting the proceedings.

"[Appellant]: He's calling me a pussy.

"The Court: Sir, put your hands behind your back. [¶] Ladies and gentlemen you are not to consider that for any purpose in this case.

"[Appellant]: They setting me up. They are not giving me a fair trial. I know the informant. We smoke crack together. Ask them to pull my phone records. They met with me on the 10th. Ask for my phone records, jury. I smoked crack with the informant.

"The Court: You are disrupting the proceedings.

"[Appellant]: I'm not lying to you, jurors. They got a crack head and there's proof I never sold anything. I never did. I never sold anything. I want to testify and tell you the truth.

"The Court: And he will have his chance.

"[Appellant]: Calling me a pussy, that's wrong."

Appellant was removed from the courtroom, and the court instructed the jury not to consider his removal or any of his comments for any purpose in the case. The remaining prosecution witnesses testified in appellant's absence, and the People rested.

6

The court then conducted a hearing pursuant to Penal Code section 1043 in lockup, offering appellant a chance to rejoin the proceedings. Appellant promised to conduct himself "consistent with the decorum that the court orders . . . and respect the inherent concept of the court and judicial proceedings."

Before returning to the courtroom, the court conducted a *Marsden*[4] hearing during which appellant complained his counsel had ignored exculpatory evidence, refused to consider any defense strategy, failed to communicate with appellant, and had called appellant a "'dumb nigger.'" Defense counsel responded, "That's a lie," and asserted that it was appellant who refused to discuss the case. The attorney added that he had never heard about other evidence until that morning, and that he agreed that appellant had no viable defense to the charges. The court denied appellant's *Marsden* motion, finding the deterioration in the relationship insufficient to interfere with the attorney's continued representation of appellant.

Appellant then declared his intent to testify, and the court announced it would allow the prosecution "to use 11352(a) of the Health and Safety Code as impeachment and nothing else." Although only three of appellant's alleged prior felony convictions were section 11352, subdivision (a) offenses, defense counsel agreed to "unbifurcate" the trial on all nine alleged prior felony convictions.

Before the jury was brought into the courtroom, defense counsel pointed out that appellant was in physical restraints and asked that they be removed. The trial court denied the request on the ground that appellant had shown a "proclivity for raising his arms around at the time the bailiff was trying to escort him out."

---

[4] This was appellant's third *Marsden* hearing. (*People v. Marsden* (1970) 2 Cal.3d 118.)

Appellant was already seated in the witness box when the jury entered, but after he testified, the trial court invited him to sit with his lawyer again. At the end of the trial the court instructed the jury with CALJIC No. 1.04.[5]

## B. *The Absence of Evidence Establishing a Manifest Need or Adequate Justification for Physical Restraints Renders the Trial Court's Decision to Allow Appellant to Appear Before the Jury in Shackles an Abuse of Discretion and Violation of Appellant's Constitutional Rights*

The present record fails to demonstrate either a "manifest need" required under California law or an "adequate justification" necessary under federal law to uphold the trial court's decision to shackle appellant. Accordingly, the trial court's denial of the defense request to have appellant's restraints removed constituted an abuse of discretion and violated appellant's federal constitutional rights.

"'In general, the "court has broad power to maintain courtroom security and orderly proceedings" [citation], and its decisions on these matters are reviewed for abuse of discretion. [Citation.] However, the court's discretion to impose physical restraints is constrained by constitutional principles. Under California law, "a defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints." . . . [Citation.]' [Citation.]" (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 389; *People v. Lomax* (2010) 49 Cal.4th 530, 558–559; *Duran*, *supra*, 16 Cal.3d at pp. 290–291.) Similarly, "The Fifth and Fourteenth Amendments to the federal Constitution bar the use of visible restraints 'unless the trial court has found that the restraints are justified by a state interest specific to the particular trial.' (*People v. Stevens* (2009) 47 Cal.4th 625,

---

[5] "The fact that physical restraints have been placed on [appellant] must not be considered by you for any purpose. They are not evidence of guilt, and must not be considered by you as any evidence that he is more likely to be guilty than not guilty. You must not speculate as to why restraints have been used. In determining the issues in this case, disregard this matter entirely." (CALJIC No. 1.04.)

633; see also *Deck*[, *supra*,] 544 U.S. 622, 629.)" (*People v. Gamache* (2010) 48 Cal.4th 347, 367.)

Our Supreme Court has observed that the trial court's discretion to subject a defendant to physical restraints in the jury's presence is "relatively narrow." (*People v. Cox* (1991) 53 Cal.3d 618, 651, disapproved on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *Duran*, *supra*, 16 Cal.3d at pp. 292–293.) "In deciding whether restraints are justified, the trial court may 'take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial.' [Citation.] These factors include evidence establishing that a defendant poses a safety risk, a flight risk, or is likely to disrupt the proceedings or otherwise engage in nonconforming behavior. [Citations.]" (*People v. Gamache*, *supra*, 48 Cal.4th at p. 367; *Deck*, *supra*, 544 U.S. at pp. 628–629; *Duran*, *supra*, 16 Cal.3d at p. 291.) If the trial court concludes that restraints are necessary, the "court should select the least obtrusive method that will be effective under the circumstances. (*Duran*, at p. 291.)" (*People v. Gamache*, *supra*, 48 Cal.4th at p. 367.) And whatever method the court determines to be necessary must be reasonably likely to achieve the desired result. (See e.g., *People v. Soukomlane* (2008) 162 Cal.App.4th 214, 230 [requisite showing of adequate justification or manifest need for physical restraints absent where defendant's behavior consisted only of emotional outbursts during trial].)

Although no formal hearing is required, the record must show the court based its determination on facts, and a court's decision to use visible restraints without evidence in the record establishing a threat of violence, escape, or nonconforming conduct constitutes an abuse of discretion. (*Duran*, *supra*, 16 Cal.3d at p. 291; *People v. Stevens*, *supra*, 47 Cal.4th at p. 633.) In reviewing the trial court's imposition of restraints, we consider whether the trial court "reasonably balanced the need for heightened security against the constitutional rights afforded the defendant." (*People v. Stevens*, *supra*, 47 Cal.4th at p. 643.) And we look to see that the trial court "made the findings necessary to impose a particular security measure—that there was a manifest need, and that the measure chosen

9

was the least obtrusive that would still be effective—and further whether those findings were supported by substantial evidence." (*People v. Gamache*, *supra*, 48 Cal.4th at p. 368.)

Our Supreme Court has identified numerous cases where a manifest need for physical restraints had been demonstrated: "'(See *People v. Kimball* (1936) 5 Cal.2d 608, 611 [defendant expressed intent to escape, threatened to kill witnesses, secreted lead pipe in courtroom]; *People v. Burwell* (1955) 44 Cal.2d 16, 33 [defendant had written letters stating that he intended to procure a weapon and escape from the courtroom with the aid of friends]; . . . ; *People v. Hillery* (1967) 65 Cal.2d 795, 806 [defendant had resisted being brought to court, refused to dress for court, and had to be taken bodily from prison to court]; *People v. Burnett* (1967) 251 Cal.App.2d 651, 655 [evidence of escape attempt]; *People v. Stabler* (1962) 202 Cal.App.2d 862, 863–863 [defendant attempted to escape from county jail while awaiting trial on other escape charges]; *People v. Loomis* (1938) 27 Cal.App.2d 236, 239 [defendant repeatedly shouted obscenities in the courtroom, kicked at the counsel table, fought with the officers, and threw himself on the floor].)'" (*People v. Mar* (2002) 28 Cal.4th 1201, 1216–1217 (*Mar*); *Duran*, *supra*, 16 Cal.3d at p. 291.)

As the foregoing cases illustrate, the justification offered by the trial court in this case—appellant's "proclivity for raising his arms around at the time the bailiff was trying to escort him out"—failed to demonstrate any "manifest need" for physical restraints, much less a balancing of the court's security interests against appellant's right to a fair trial. To the contrary, the imposition of physical restraints here appears unrelated to any legitimate security concerns, but was instead a further punishment for appellant's verbal outbursts during trial for which appellant had already been removed from the courtroom. While the factors a court may consider in determining whether imposition of restraints is justified include the disruption of proceedings or other "nonconforming behavior" by the defendant, no case has upheld the use of shackles for a defendant who has merely had verbal outbursts or shown a "propensity to wave his hands around." (See *People v.*

10

*Soukomlane*, *supra*, 162 Cal.App.4th at p. 230; see also *People v. Cox*, *supra*, 53 Cal.3d at p. 651 [a manifest need for restraints may be based on "'[e]vidence of any nonconforming conduct . . . which . . . would disrupt the judicial process *if unrestrained*,'" italics added].)

To be sure, the court had authority to take measures to address and prevent appellant's numerous disruptions of the proceedings. "It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated." (*Illinois v. Allen* (1970) 397 U.S. 337, 343 [90 S.Ct. 1057].) The trial court thus clearly acted within its discretion in removing appellant from the courtroom after warning him that it would do so if he continued to interrupt the proceedings. But it abused that discretion and violated due process when it imposed visible restraints without balancing the need for heightened security against appellant's constitutional rights, and without making findings supported by substantial evidence that such measures were necessary. (*People v. Stevens*, *supra*, 47 Cal.4th at p. 643; *People v. Gamache*, *supra*, 48 Cal.4th at p. 368.) "[G]iven their prejudicial effect, due process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case." (*Deck*, *supra*, 544 U.S. at p. 632.)

We are not unmindful of "the need to restrain dangerous defendants to prevent courtroom attacks, or the need to give trial courts latitude in making individualized security determinations." (*Deck*, *supra*, 544 U.S. at p. 632.) Indeed, the Supreme Court has noted that there will be cases where the "perils of shackling are unavoidable." (*Ibid*.) But the present case, in spite of appellant's disruptive behavior, is not one of them.

**C.** *The Error Cannot Be Deemed Harmless and Requires Reversal of*
   *Appellant's Conviction*

Respondent contends that appellant cannot establish prejudice because the trial court properly instructed the jury not to consider the shackles for any reason, and the evidence of his guilt was overwhelming. We disagree.

Shackling a defendant in the presence of the jury has long been deemed an inherently prejudicial practice, which conveys to the jury that the defendant must be separated from the community at large because he is especially dangerous or culpable, or is the cause of some official concern or alarm. (*Deck*, *supra*, 544 U.S. at p. 635; *Holbrook v. Flynn* (1986) 475 U.S. 560, 569 [106 S.Ct. 1340]; *People v. Stevens*, *supra*, 47 Cal.4th at pp. 643–644.) As the majority in *Deck* observed, "Visible shackling undermines the presumption of innocence and the related fairness of the factfinding process. [Citation.]" (*Deck*, *supra*, 544 U.S. at p. 630; *McDaniel*, *supra*, 159 Cal.App.4th at p. 746.) Our Supreme Court has similarly concluded "that it is manifest that the shackling of a criminal defendant will prejudice him in the minds of the jurors." (*Duran*, *supra*, 16 Cal.3d at p. 290.) "Thus, where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation. The State must prove 'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.' [Citation.]" (*Deck*, *supra*, 544 U.S. at p. 635; *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824]; *McDaniel*, *supra*, 159 Cal.App.4th at p. 745.)

After reviewing the entire record in this case, we cannot conclude with confidence that the trial court's constitutional error was harmless beyond a reasonable doubt. Although the audio and video evidence, along with Carter's testimony in support of counts 1 and 2 was "overwhelming," the evidence of appellant's guilt on count 3, possession for sale, was not.

12

Appellant's entire defense was that he was a heavy user of crack cocaine, and the cocaine found in his possession was for his personal use. He testified that he had smoked cocaine with the police informant before the events of this case, and on the day of his arrest, he had obtained the cocaine in his possession from Carter. But by appearing before the jury to testify in shackles, appellant's credibility was irreparably harmed. Moreover, the shackles branded appellant as a dangerous person, suggesting that he was guilty of something even more serious than the charges reflected. And the litany of prior drug convictions with attendant prison terms only served to exacerbate the image of appellant as a dangerous felon unworthy of any credence.

Respondent contends that the court's instruction pursuant to CALJIC No. 1.04 to disregard appellant's shackles mitigated any possible prejudice. We disagree on this point as well.

When a defendant appears before the jury in visible restraints, the trial court has a sua sponte obligation to instruct the jury "'that such restraints should have no bearing on the determination of the defendant's guilt.'" (*Mar*, *supra*, 28 Cal.4th at p. 1217, quoting *Duran*, *supra*, 16 Cal.3d at pp. 291–292.) As a general rule, an appellate court may presume the jury followed such an admonition. (*People v. Delgado* (1993) 5 Cal.4th 312, 331; *People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17.) However, where, as here, the court admonished the jury only *after* the defendant had testified, the jury was free to focus on his shackles, speculate on the possible reasons for their imposition, and allow that distraction to taint his credibility as well as the entire defense.

As one court has observed, "While we consider it reasonable to presume that jurors can follow an admonition to disregard shackles that is given at the at the beginning of trial, before they have heard any evidence, we question whether it is reasonable to presume that jurors can and will follow such an admonition when it is given after the defendant has testified and they have already had a chance to react to and draw negative inferences from seeing him or her shackled." (*McDaniel*, *supra*, 159 Cal.App.4th at p. 747.) Moreover, "[a] shackling instruction, in words the United States Supreme Court

13

used in a different context, is 'not "some talisman that dissolves all constitutional protections."' (*Butterworth v. Smith* (1990) 494 U.S. 624, 630 [110 S.Ct. 1376].) With or without an instruction, shackles 'should be used as a last resort not only because of the prejudice created in the jurors' minds, but also because "the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold."' [Citations.]"[6] (*People v. Soukomlane*, *supra*, 162 Cal.App.4th at p. 231.)

In sum, respondent has failed to convince us that requiring appellant to testify in shackles without any showing of manifest need or adequate justification did not contribute to the verdict. We therefore cannot find that the trial court's abuse of discretion was harmless beyond a reasonable doubt. Accordingly, we reverse the judgment.

---

[6] *McDaniel* also warned of the constitutional pitfalls of presuming that a jury invariably follows a court's shackling admonition and routinely cures the trial court's failure to make a determination that shackling is necessary. If such an admonition automatically cured the shackling error, "trial courts could shackle prison inmates as a matter of routine, knowing that a subsequent admonition and appellate presumption would in most cases render any abuse of discretion harmless. As noted, however, routine shackling without an individualized justification is contrary to the procedures outlined by the United States and California Supreme Courts. Moreover, a blanket application of the presumption could, as an unintended consequence, undermine the trial court's sua sponte obligation to make a determination on the record that shackling is reasonably necessary." (*McDaniel*, *supra*, 159 Cal.App.4th at p. 747, fn. 9.)

**DISPOSITION**

The judgment is reversed (No. NA097138), and the sentence in the probation violation matter is vacated (No. NA089854).

NOT TO BE PUBLISHED.


LUI, J.

We concur:


CHANEY, Acting P. J.


JOHNSON, J.