Filed 1/15/15  P. v. Patterson CA3

# NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C073916 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F06301) |
| v. | |
| MATTHEW PATTERSON, | |
| Defendant and Appellant. | |

A jury convicted defendant Matthew Patterson of felony assault with force likely to cause great bodily injury (i.e., aggravated assault) and two misdemeanors.  (Pen. Code, § 245, subd. (a)(4).)[1]  Defendant was sentenced to an eight-year state prison term for the assault, calculated as the upper term of four years and doubled because of a prior strike conviction.  (§ 1192.7, subd. (c).)

---

[1]  Undesignated statutory references are to the Penal Code.

1

On appeal, defendant contends (1) the trial court had a sua sponte duty to instruct the jury on the lesser included offense of simple assault; (2) the trial court erred by instructing on flight; (3) the trial court violated his right to a fair trial by repeatedly referencing his in-custody status during jury voir dire; and (4) he received ineffective assistance of counsel because his counsel failed to object to these in-custody comments and to certain testimony. We find no prejudicial error and shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Before the Domestic Violence Episode*

In September 2012, defendant and his girlfriend, Tamara Davis, the victim here, went to see Davis's friend, Shavonne Taylor, to discuss sharing an apartment together. During the car ride to Taylor's apartment, defendant accused Davis of cheating on him. As a result, both were angry when they got to Taylor's apartment complex. Once there, defendant decided to remain in the car while Davis took the keys out of the ignition and went up to Taylor's apartment.

Subsequently, defendant went up to Taylor's apartment, pounded on the door, and angrily demanded the car keys so he could leave; defendant and Davis again argued—this time outside of Taylor's apartment—over whether Davis was cheating on him. After this last argument, Davis and Taylor returned to the apartment; one of them tried to lock the door, but defendant forced his way in.

### *The Domestic Violence Episode*

After forcing his way in, defendant again demanded the car keys from Davis, who was crouched down on the floor. Taylor saw defendant hit Davis at least twice with a closed fist, on both sides of her face. Davis raised her hands and elbows to cover her face. Defendant yelled "I'm gonna dog you out."

2

Once defendant obtained the car keys, he left the apartment. After defendant left, Taylor noticed that Davis was shaking and crying. Her shirt was torn. Defendant had apparently put his hand into Davis's shirt and ripped it, as he believed the keys were in her bra. Davis's left cheek and her cheekbone were red, swollen and scratched. Taylor called 911.

### After the Domestic Violence Episode

Davis informed the 911 dispatcher that defendant hit her several times, took her car, and that he may be driving under the influence of alcohol.

Davis told responding police officers that she and defendant had a fight and he hit her. Davis also reported that defendant pounded on Taylor's apartment door, yelled at them to open the door, continuously demanded the car keys from her, and ripped her shirt to obtain the keys. After being hit so many times, Davis gave the car keys to defendant. Taylor's account of the incident to the police officers echoed Davis's report.

After the police left, Davis and Taylor walked to a nearby store. As they were walking back to the apartment, defendant drove by and offered them a ride. Davis accepted. Taylor declined, and walked home. But once at the complex, defendant again accused Davis of cheating on him, so Davis decided to stay with Taylor. Later that night, the police arrested defendant at Taylor's apartment complex.

Photographs admitted at trial showed a scratch on Davis's left cheek, as well as redness and swelling on the left side of her face.

After his arrest, defendant phoned Davis four times from the jail. During one of these calls Davis confirmed the previous night's incident by stating, "[D]on't try to guilt me like I did this to you. You did something to me and your end result, your consequence is where you are now. That is not my fault at all." During another call, Davis stated, "Hey, you did that. You made the decision to do what you did to me."

3

Davis also asked defendant, "[I]f you love me then why am I always in the hospital? Why everytime I yawn my freaking head hurts because I have a knot by my ear, huh?"

Nonetheless, while trial was pending, Davis recanted. She wrote a letter, and testified at the preliminary hearing and at trial that the September 2012 incident never happened. Davis claimed she lied during the jailhouse calls because she was hurt by defendant's accusations of infidelity. By trial, Davis and defendant were engaged.

Defendant did not testify or call any witnesses in his defense.

### Prior Domestic Violence Episode

In March 2012, defendant attacked Davis in his mother's home. Davis told the police that defendant dragged her by the hair across the floor, pulling some out in the process. After the incident, Davis obtained hospital treatment. Photographs showed Davis had a mark on her forehead above her right eye and was missing some hair from her scalp.

For this incident, defendant pleaded no contest to felony assault with force likely to cause great bodily injury. Davis tried unsuccessfully to get these charges dropped too. During the current trial, she claimed her sister was responsible for the March 2012 incident.

## DISCUSSION

### I. Alleged Instructional Errors

Defendant alleges two instructional errors: (1) the trial court had a sua sponte duty to instruct the jury on simple assault (§ 240), a lesser included offense to his charge of assault with force likely to cause great bodily injury (sometimes referred to as aggravated assault); and (2) the trial court erred in instructing on flight.

4

### A. Trial Court Was Not Required to Instruct Sua Sponte on the Lesser Included Offense of Simple Assault

Under California law, a trial court must instruct sua sponte (i.e., on its own initiative) on the general principles of law applicable to the case; this includes instruction on lesser included offenses. (*People v. Breverman* (1998) 19 Cal.4th 142, 148-149, 154 (*Breverman*).)

Instruction on a lesser included offense is required whenever evidence that the defendant is guilty *only* of the lesser offense is " ' "substantial enough to merit [the jury's] consideration." ' " (*People v. Taylor* (2010) 48 Cal.4th 574, 623 (*Taylor*), quoting *Breverman, supra,* 19 Cal.4th at p. 162.) This substantial evidence requirement is met by " ' "evidence from which a [reasonable] jury . . . could . . . conclude[]" ' that the lesser offense, but not the greater, was committed." (*Breverman*, at p. 162.)

"[T]he use of hands or fists alone may support a conviction of assault 'by means of force likely to produce great bodily injury.' " (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028, 1032.) Whether a fist "would be likely to cause great bodily injury is to be determined by the force of the impact, the manner in which it was used and the circumstances under which the force was applied." (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 748-749 (*McDaniel*), citing *People v. Kinman* (1955) 134 Cal.App.2d 419, 422.) A single blow to the face may be sufficient to cause great bodily injury. (*In re Nirran W.* (1989) 207 Cal.App.3d 1157, 1161-1162; *People v. White* (1961) 195 Cal.App.2d 389, 391-392.) "Great bodily injury" is defined as "a significant or substantial physical injury." (§ 12022.7, subd. (f); see *People v. Brown* (2012) 210 Cal.App.4th 1, 7.) The force has to be "likely" to produce a great bodily injury; it is immaterial whether the victim in fact suffers any harm. (*People v. Aguilar*, *supra*, 16 Cal.4th at p. 1028.)

Here, simple assault is a lesser included offense of defendant's aggravated assault charge. (*McDaniel*, *supra*, 159 Cal.App.4th at pp. 747-748.) Simple assault is an

unlawful attempt, coupled with a present ability, to commit a violent injury on a person. (§ 240.)  However, as we shall explain, no reasonable jury could conclude, based on the law and facts here, that this lesser offense, but not the greater, was committed. Consequently, the trial court acted properly in not instructing sua sponte on the lesser included offense of simple assault.

Defendant initially pounded on Taylor's door in his attempt to get into Taylor's apartment.  Later, defendant forced his way inside the apartment.  Once inside, defendant punched Davis at least twice with a closed fist, on both sides of her face.  Defendant hit Davis hard enough to cause swelling and leave a red mark on the left side of her face. Davis complained of pain every time she yawned from a knot behind her ear.  As defendant assaulted Davis, he yelled at her, "I'm gonna dog you out."  Moreover, defendant ripped Davis's shirt to reach into her bra for the car keys, which further demonstrates the force he used.

Relying on *People v. Beasley* (2003) 105 Cal.App.4th 1078, 1088, defendant contends this is insufficient evidence to support a conviction of assault by means of force likely to produce great bodily injury.  However, in *Beasley*, the issue was whether a broomstick could constitute a deadly weapon.  (105 Cal.App.4th at pp. 1087-1088.) Defendant also incorrectly asserts that *In re Nirran W.*, *supra*, 207 Cal.App.3d 1157 and *People v. White*, *supra*, 195 Cal.App.2d 389 are distinguishable based on the substantial degree of force used in those cases.  (*In re Nirran W.*, at pp. 1161-1162; *White*, at p. 392.) The general principle from *In re Nirran* and *White*, however, applies to the present case: A single punch or a blow is sufficient for a finding of assault by means of force likely to produce great bodily harm.  (*Ibid.*)

Based on the evidence, a reasonable jury could not conclude that defendant was guilty *only* of the lesser included offense of simple assault.  (*Taylor*, *supra*, 48 Cal.4th at

6

p. 623.) Consequently, the evidence was insufficient to merit a sua sponte instruction on this offense.

### B. Trial Court's Error in Providing Flight Instruction Was Harmless

Defendant contends the trial court erred by instructing the jury on flight pursuant to CALCRIM No. 372, as follows, "If the defendant fled or tried to flee immediately after the crime was committed or after he was accused of committing the crime, that conduct may show that he is aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance [of that conduct]. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

An instruction on flight requires an action from which a jury could infer that the flight reflected consciousness of guilt. (*People v. Crandell* (1988) 46 Cal.3d 833, 869.)

Here, the flight instruction was not warranted by defendant's actions after he assaulted Davis. Defendant's desire to leave Taylor's apartment preceded the assault. Prior to the assault, defendant twice went to Taylor's apartment and demanded the car keys so he could leave. During the assault, defendant demanded the car keys from Davis. Defendant even ripped Davis's shirt to obtain the keys. Although defendant left Taylor's apartment after the assault (with the keys in hand), this did not reflect consciousness of guilt because, after the assault, he came back and offered a ride to Davis and Taylor as they were walking back from the store; and he returned to the apartment complex. Thus, the trial court erred in giving CALCRIM No. 372.

However, the error was harmless because it is not reasonably probable that defendant would have fared any better had the trial court not given the CALCRIM No. 372 instruction. (*People v. Mendias* (1993) 17 Cal.App.4th 195, 202; *People v. Watson* (1956) 46 Cal.2d 818, 836 [standard of harmless error applicable to this state law error].)

7

First, the instruction included language about how flight or an attempt to flee cannot prove guilt by itself. Thus, the instruction does not assume guilt. Instead, it allows the jury to make a permissive inference and factual determination based on the evidence. Second, the prosecutor did not rely on flight to prove guilt. Third, there was strong evidence to prove guilt other than defendant's leaving Taylor's apartment after assaulting Davis, including (1) a 911 call during which Davis reported the aggravated assault; (2) Taylor's eyewitness report to the police and her testimony at trial; (3) defendant's jailhouse calls to Davis; (4) statements from two police officers based on their interactions with Davis and Taylor on the night of the event; (5) a ripped shirt; and (6) photographs of Davis documenting her injuries. Thus, even though the flight instruction was not warranted, the error was harmless.

## II. The Trial Court Did Not Violate Defendant's Right to a Fair Trial by Commenting on His In-custody Status

Defendant contends the trial court violated his right to a fair trial by repeatedly referencing his in-custody status during jury voir dire. We disagree.

The trial court stated to potential jurors, "It's obvious the defendant is in custody. That's why there is a sheriff sitting behind him." The trial court made this statement and similar ones to explain the trial process to potential jurors.

During the first morning's recess, outside of the potential jurors' presence, defense counsel, upon defendant's prompting, objected to the trial court's references to defendant's in-custody status because those comments defeated the purpose of having defendant wear civilian clothing. Contrary to the People's argument, then, defendant did not forfeit his right to raise this issue on appeal. (*Taylor*, *supra*, 48 Cal. 4th at p. 608.)

The trial court responded to defendant's objection, outside of the potential jurors' presence, by stating, "[T]he defendant is dressed out. That's clear. But he also has a deputy sheriff sitting behind him. He doesn't come in and out the door that the jurors do.

8

It's not a mystery that the defendant [is], in fact, in custody." The trial court further explained, "My inquiry of [potential] jurors is to ensure that they tell all of us before we begin, that if they have that mindset that maybe he's in custody or, in fact, determine that he is, that they will not let that impact their decision in any fashion at all, and we have their assurance up front . . . ." And the trial court concluded, "I think that's the appropriate course. It's the course that I use in every case in which a defendant is in custody, unless I'm asked to do otherwise. That was the reason for the questions. And it is a question designed, actually, to protect the defendant, in my estimation."

The trial court's apparent *standard* practice of having a deputy sheriff sit directly behind an in-custody criminal defendant, and subsequently giving the in-custody admonitions—i.e., without a showing that such law enforcement positioning is required in the individual case—is problematic. We discourage this practice as a standard practice. Having a deputy sheriff sit directly behind a criminal defendant borders on a situation that requires a finding of manifest need. (See *People v. Duran* (1976) 16 Cal.3d 282, 293 [shackling].) Here, however, neither defendant nor defense counsel objected to the deputy sheriff's presence behind defendant.

Assuming, then, the trial court erred, we turn to the question of prejudice. As we shall explain, we conclude defendant was not prejudiced by the trial court's in-custody comments.

Case law recognizes that " 'the mere fact that [a] jury is made aware of a defendant's custodial status does not deprive the defendant of his constitutional rights.' " (*People v. Ledesma* (2006) 39 Cal.4th 641, 681, quoting *People v. Valdez* (2004) 32 Cal.4th 73, 121.) Moreover, here, the trial court adopted a number of curative measures, which sanitized its problematic comments. (*People v. Ceniceros* (1994) 26 Cal.App.4th 266, 281-282 (*Ceniceros*).)

9

Even before defendant objected, the trial court had admonished the potential jurors by stating, "One of the things you are not allowed to consider is the defendant's custodial status. He's in custody. Not a mystery to anybody. But that's not evidence of anything either. What that means, he wasn't able to make bail in the case. [¶] For that reason, I will instruct you, ultimately, you can't consider the fact that he's in custody in any way at all in evaluating this case. [¶] Does everybody understand what that instruction means? [¶] Can you all promise me you will follow that instruction, that is, not consider his custodial status in any fashion in evaluating this case?" The potential jurors collectively answered, "Yes."

After defendant's objection, the trial court further commented to the potential jurors, "I talked about the fact the defendant is in custody. There is a sheriff sitting behind him, that that cannot play into your decision in any fashion at all. It is not evidence of anything. It doesn't help you to decide whether he did any of this. [¶] In fact, the elements that I give you . . . have to be proven beyond a reasonable doubt by the People. . . . [¶] One of them is not, Is the defendant in custody? It is irrelevant to your charge as jurors in deciding this case. Does everybody understand that?" The trial court gave a variation of this admonishment to potential jurors during voir dire.

And, at the end of voir dire and trial, the trial court instructed the jury with CALCRIM No. 220, as follows, "The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, is in custody, or has been brought to trial."

Defendant relies on *Estelle v. Williams* (1976) 425 U.S. 501, 512-513 [48 L.Ed.2d 126, 135] and *People v. Taylor* (1982) 31 Cal.3d 488, 491, prison clothing cases, to argue that the trial court's comments regarding the deputy sheriff's presence behind defendant violated his due process and equal protection rights. However, the United States

10

Supreme Court has allowed the use of identifiable security officers for security purposes in the courtroom. (*Holbrook v. Flynn (1986)* 475 U.S. 560, 569 [89 L.Ed.2d 525, 534-535].)

Here, the trial court admonished the jury that its in-custody comments had no bearing on defendant's guilt or innocence. Additionally, the trial court instructed the jury at length on the burden of proof during voir dire and the final jury instructions. The admonitions to the jury were clear. The trial court repeatedly told the jury to not consider defendant's in-custody status. Thus, the jury had no basis to draw an adverse inference regarding defendant's guilt from the in-custody admonitions. (*Ceniceros*, *supra*, 26 Cal.App.4th at pp. 281-282; see *United States v. Milner* (9th Cir. 1992) 962 F.2d 908, 911-912 [court's comments about defendant being a security risk did not prejudice defendant because court gave a curative instruction].)

Lastly, the trial court referred to defendant's in-custody status to ensure that the jury would not be biased against him. Defendant is not arguing there was no reason for placing the sheriff behind him. Instead, he is arguing the trial court should not have said anything about the deputy sheriff and defendant's in-custody status. For these reasons, we conclude the trial court's in-custody comments were harmless.

### III. Ineffective Assistance of Counsel

Defendant also contends his counsel performed ineffectively by failing to object to (1) the trial court's divulging his in-custody status until defendant raised the issue, and (2) Taylor's reference at trial to his prior incarceration. We disagree with both contentions.

To demonstrate ineffective assistance of counsel, a defendant must show that (1) counsel's performance "fell below an objective standard of reasonableness" "under prevailing professional norms," and (2) counsel's performance prejudiced him.

11

(*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692 [80 L.Ed.2d 674, 693-696].) Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, *supra*, 466 U.S at p. 694 [80 L.Ed.2d at p. 698].)

## A.  *Defendant's In-custody Status*

As discussed above, the trial court commented on defendant's in-custody status during the first morning of jury voir dire; and defense counsel—outside the presence of potential jurors and upon defendant's prompting—objected to the trial court's comments. Defendant contends his counsel acted ineffectively in not objecting sooner to these comments.

For the reasons expressed in part II. of this opinion, *ante*, defendant was not prejudiced by any delay in his defense counsel's objection. It is not necessary for us to consider the performance prong of the ineffective assistance test if defendant cannot meet the prejudice prong. (*Strickland*, *supra*, 466 U.S. at p. 697 [80 L.Ed.2d at p. 699].) Here, it is not reasonably probable that defendant would have obtained a better result if his counsel had raised the objection on his own volition rather than on defendant's prompting. Thus, defendant's claim for ineffective assistance of counsel on this ground fails.

## B.  *Taylor's Reference to Defendant's Prior Incarceration*

Defendant also contends he received ineffective assistance when his defense counsel failed to object to Taylor's testimony that she first met defendant at the county jail in Elk Grove. We disagree for two reasons.

First, Taylor's reference to defendant's prior incarceration was not prejudicial because the prosecutor had already properly introduced evidence of defendant's prior conviction for assault with force likely to cause great bodily harm (against Davis).

12

Second, defense counsel's failure to object to this testimony from Taylor might have been a tactical decision so as not to further highlight defendant's history of domestic violence with Davis. We will not second-guess counsel's reasonable tactical decisions. (*People v. Scott* (1997) 15 Cal.4th 1188, 1212-1213; *People v. Fosselman* (1983) 33 Cal.3d 572, 581-582.) Accordingly, we reject this claim of ineffective assistance under both prongs of the applicable test—prejudice and performance. (*Strickland*, *supra*, 466 U.S. at p. 697 [80 L.Ed.2d at p. 699].)

## DISPOSITION

The judgment is affirmed.


      BUTZ      , J.


We concur:


      RAYE      , P. J.


      DUARTE      , J.